## Adams Wakeman v. Robert Akey.

*Witnesses: Credibility: Appearance and character of witness.* No technical
rules can be laid down to determine the credit to be given to conflicting testi-
mony.    Every court must determine this according to its own impressions.
And where the court below has seen or known the witnesses, that fact will
weigh with the appellate court in solving doubts.

*Mortgagor: Payment: Indorsement: Estates of deceased persons: Evidence.*
Where a mortgagor claims to have made a large payment to a deceased person
shortly before his death, and produces no voucher, or indorsement, and shows
no entry by the deceased, he should bring very convincing proof to sustain
his defense.

*Testimony of party: Inconsistent conduct: Misapprehensions.* And when the
defendant obtained an extension from the administrator for back interest,
which would not have been legally due had such payment been made, and only
set up such payment some time thereafter, and did not attempt to cross-examine
the administrator on these facts, it was held impossible to account for any
misapprehension likely to lead to such conduct.

*Proofs: Circumstantial evidence: Payment.* Apart from this, the circumstances sworn to concerning the alleged payment were held to be grossly improbable, and the defense rejected.

*Heard April 28 and 29. Decided May 5.*

Appeal in Chancery from St. Joseph circuit.

*John B. Shipman,* for complainant.

*William L. Stoughton,* for defendant.

CAMPBELL, J.

Complainant filed his bill to foreclose a mortgage given by defendant to Mark H. Wakeman, as guardian of certain minor heirs. Mark H. Wakeman died June 10, 1866, and complainant succeeded to the guardianship. No dispute arises except as to a payment of eight hundred dollars, which defendant claims he made to Mark on the 1st of June, 1866.

No receipt was given, no entry was made by the payee in any book or memorandum which he left behind him, and no money was deposited or found which could have belonged to such a payment. The proof depends entirely on the testimony of defendant, and of one Mattison, and upon some corroborating facts from two other witnesses. Defendant swears positively to the payment, and so does Mattison.

The matter must be determined by the credit to be given to this evidence. The court below decreed against it. There were several witnesses for and against the veracity of defendant, and against that of Mattison.

A question arose upon the admissibility of defendant's testimony, which we have not found it necessary to decide.

In determining the force and credit of testimony no technical rules can be of much service. Every court must decide upon facts according to the belief which results from the proofs, and their actual effect upon the judgment of the tribunal weighing them. Much respect will always

WAKEMAN v. AKEY.

be due to the opinion of the judge who decides the cause below, with more or less presumable knowledge of the witnesses.

As there was no voucher taken, and no endorsement or entry made at the time of the alleged payment, both of which are usual, the burden of showing a payment is on the defendant, and the evidence of it should be very clear. The death of the only person capable of meeting such evidence by his own knowledge, makes it proper to scan the proofs closely.

The mortgage fell due in April, 1866, when there was payable two thousand one hundred and sixty-eight dollars and seventy-five cents principal, and about two years' interest at seven per cent. Wakeman appears from the proofs to have kept his accounts carefully in regard to the trust, and in regard to this mortgage. His moneys, other than this payment, are accounted for. The only prior payment was endorsed on both bond and mortgage. He was sick continuously from the first of June to the tenth, when he died. If he had the money, its disappearance was mysterious and not easily explained.

The facts alleged in proof of the payment were, in brief, that on the first of June, 1866, he found defendant in his field, ploughing with a young horse, and that Mattison and one Maxfield were there, the former at the time of payment, and the latter just after. Mattison swears he saw the money counted. Defendant thinks he did not see it. Defendant swears that he paid Wakeman the money, and that Wakeman offered to go to the house with him and give him a receipt, but defendant said he had a wild horse, and would not wish to leave it. Defendant told him to give credit therefor on the bond and mortgage; and Wakeman told Mattison of the payment and its purpose.

The complainant swears that in the ensuing fall he called on defendant for payment, and asked him for the back interest, and defendant professed his inability to pay it, but proposed to complainant to extend the time a year

longer, and he would pay ten per cent. interest on both the principal and the accrued interest. And he further swears that it was not until the fall of 1867 that the claim of payment was set up. No attempt was make to cross-examine or contradict complainant on these facts.

As the payment, if made, covered all the back interest and several hundred dollars of principal, and the amount of interest on the new principal could not have exceeded forty or fifty dollars, the discrepancy of fact cannot easily be explained on the ground of misapprehension between the two parties. Complainant supposed the whole was unpaid, and defendant's action was not such as might have been expected on any different theory.

We think this raises a sufficient contradiction to present an issue of veracity, and that the failure to cross-examine or contradict must be taken as bearing somewhat against defendant.

The next questions to be considered relate to the probabilities. Mattison is impeached without any supporters. Defendant is impeached by some and sustained by others. The circumstances become important in weighing the credit of these witnesses.

The visit of Wakeman was not expected by defendant. There is something unusual, to say the least, in the alleged fact that, without any occasion for doing so, defendant should have carried so large a sum of money as eight hundred dollars upon his person while ploughing on a midsummer day. The existence of the controversy demanded a full explanation. The direct testimony of defendant describing the fact is less than ten lines. He does not state where he got his money, nor why he had it with him. He does not state the size of the bills. Eight hundred dollars in bills of average size would form a bulky parcel, not convenient for carrying under such circumstances. He was fairly called on to explain matters more fully than would be necessary under more probable conditions. We cannot omit expressing our regret that the cross-examination was so meager as to be of no service in following out this line

of investigation. He does not state whether or not Wakeman had the papers with him. Nor is the reason given for not obtaining a receipt quite convincing. Payments by farmers of such large amounts are commonly made with some care and deliberation. It does not seem probable that there were no means for securing the safety of defendant's horse, if he desired to leave him. And if we believe the testimony of his son, Samuel Akey, the latter was there and could have seen to the animal. But if this was also impossible, no very good reason appears why Wakeman could not have gone to the house and left the receipt there.

The fact that Wakeman was taken ill on that day might account for some omissions in making his business entries. It would not explain the absence of memoranda in his pocket memorandum book, unless his illness was very sudden and severe. But, on the other hand, this would make the disappearance of the money still more unaccountable. And it presents also a reason for selecting this occasion for a false defense, if such a defense should be planned, as favoring the concealment of the falsehood by the confusion incident to such a time.

Upon the whole facts, we are not convinced that any such payment was made. We think the evidence preponderates the other way. The defendant's story is contradicted, and is improbable. His credit is not such as to overcome these proofs, and his story is told too curtly to enable any one to look into the circumstances, or to try it by the usual tests. If he tells the truth, he is unfortunate in not seeing that more frankness was called for, and that in a case where full explanations are needed, a bald assertion is not convincing.

We think the decree should be affirmed, with costs, and the case must be remanded to the court below for further proceedings.

CHRISTIANCY and COOLEY, JJ., concurred.

GRAVES, CH. J., did not sit in this case.